May it please the court, Dennis Charney for the appellant Ruben Nungaray. As the court is aware, Mr. Nungaray was initially charged with five counts of possession, a felon in possession of a firearm. He pled guilty to one of those counts and without the benefit of a plea agreement, and rather than proceed to trial, the government dismissed the other four counts because they really were all related to one incident of the issue that presents itself to the court today. The interesting issue in this case is that both sides have traded in our respective briefs citations to cases, some from the Ninth Circuit, some from other circuits, that we each argue should guide the court in reaching its decision in this case. I'm arguing, of course, that Mr. Nungaray was not in possession of the firearms that the district court concluded should result in the two-point enhancement, and of course the government takes the opposing view. What we find, though, in all of those cases is one interesting caveat, which seems to indicate that each case involving arguments and factual scenarios of this nature are ones where the court or the courts have routinely stated that this is fact-driven and specific to the unique facts of each case. And for the government and for the defense, neither of us have really come up with anything exactly like this. All we can do is simply draw the best analogy possible to help guide this court to reach the conclusion that we each think is the appropriate conclusion. Now, in this instance, you know, at sentencing I was a little bit on the spot, I guess, from the district judge who was asking me some questions, and then you sit on a plane and you lay in your hotel room bed and you think, what am I going to say tomorrow morning? What's the best way to do this? And one consideration that I had, and I'm assuming that some of you at least have been on the district bench before and had had probationers, and I'll assume that perhaps some of these probationers were prohibited from engaging in conduct that was otherwise legal, but made illegal by virtue of their positions on probation or supervised release, such as Mr. Little Dog, who without a condition of probation could possess pornography. But one issue that I considered yesterday was the following situation. Imagine a probationer who, and probably not a federal case, but more likely a state case, who was placed on probation for a series of driving under the influence charges. And as a term and condition of probation after he was released from the penitentiary was told by the district court, you may not possess or consume alcohol as a term of probation, otherwise legal activity, but made illegal to this individual by virtue of his status as a probationer. And the individual then goes out and gets a job at a convenience store and has a probation officer sitting in the back, and on Super Bowl Sunday an individual walks in and says, Mr. Clerk, where can I find some chips, some bean dip, and a six-pack of Corona? And he says, back there. And the person goes and he picks out his items, and this individual who's on probation, just got himself a nice new job, swipes the six-pack of Corona across the scanner, and the probation officer says, you're going to jail. Because you, sir, have just possessed alcohol in violation of your term of probation. And then this matter goes to the court on the same burden of proof that is presented in this case, a preponderance of the evidence for a probation violation. And the gentleman says, I was just doing my job checking this out. I didn't possess this. I didn't have any intention to control this alcohol. I didn't do anything other than just sell it for another individual. I would imagine that as district judges, seeing an individual trying to make his way freshly out of prison, who is engaging in otherwise legitimate behavior, would have a difficult time sending that person back to prison and would look at this and wonder, was that person really possessing the alcohol on the day in question by virtue of his position as simply selling it for the store where he works? Well, this is very different from that though, isn't it? First of all, what evidence is there that Cora even exists? Other than your client's testimony. Other than my client's testimony, there is none. But the district court never made no findings that that was not the situation. I mean, we really do, for the most part, come here to court today on stipulated facts or at least uncontroverted facts. It is the government's burden. All right. How about this then? Okay. Pages 11 and 12 of the transcript. The first thing that happens when your client gets into the car is he introduces himself to the undercover and says, follow me to my residence. Why my residence? If the guns are not at his residence, why did he ask him to come to his residence? The undercover says, no, as any undercover would. I'm not going to your, I'm not going to play your turf. So a little while later, he says to him something to the effect of, I said, I'm not going to your residence. What did he say in response? I said, I asked him if he had brought the guns with him, was the next thing. He said, no, I wouldn't bring them out in public. Your client says, I wouldn't bring them out in public, right? The verb bring sounds like he's got the ability to possess or does possess. And then finally on page 15 of the transcript, he volunteers to call him for another deal. He does do that. So why don't all of these things add up along with the other facts that are, or are somewhat analogous to the cases cited by the government? Why don't all of these things add up to constructive possession? I think because once again, we get to the issue of power versus an end intent. And the whole point is, is that even the district court in, in reaching his conclusions indicated that he was giving credit to Mr. Nungare for not having the intent. And it made a comment along those lines. He really didn't want to have them, you know, in his physical possession, so to speak. And so just because he offered to do another deal in the future, doesn't necessarily mean that he had the present ability to do so. Maybe he had just made a connection. Perhaps he was just being friendly. But doesn't it undercut his credibility that he's just doing a favor for a friend three months after he's released from prison for a felony, knowing that he's not allowed to possess your weapon as a prior convicted felony. Why would he offer to do a second deal? Well, but the, I guess the very point of that is, is that the district court never concluded that he lacked any credibility whatsoever. The court, for the most part, seemed to conclude that what Mr. Nungare was saying was in fact accurate. There wasn't a debate on what, what the actual evidence was. And the district court sentenced accordingly. I have only two and a half minutes left. Can I reserve those? Because you took so long on your hypothetical. Thank you for the arguments. And you've got two and a half minutes for rebuttal. Now, Ms. Wick. Good morning, Your Honors. May it please the court. My name is Anne Wick. I represent the United States today. The sole question before this court is whether or not the district court clearly erred in determining by a preponderance of the evidence that Mr. Nungare possessed four firearms. And because that, the answer to that question is no, the government submits and requests this court to affirm the district court. Mr. Nungare's whole position rests on a couple of basic propositions. His position is that he didn't touch the guns. They didn't belong to him. And he was helping out a friend. And in his mind, therefore, he didn't possess them. However, what the record demonstrates and what is supported by precedent is that, in fact, he did possess these guns and demonstrated his possession with all of his actions and all of his directions on the day in question. And looking at what he did to demonstrate that, Your Honors have picked up on some of those facts in the record already. But essentially, he acted like the defendant in United States v. Cousins. He initiated a sale. He negotiated the price. He sent photos of the firearms, which is comparable to Cousins arranging a sample to be provided of the stolen liquor in that case. He showed up to do the transaction. He accepted payment for the transaction. His directions to Crystal, if his testimony is to be believed, his directions to Crystal are very revealing. He was very specific in her direction to show up with the firearms, to look for the specific vehicle he's going to be getting into, to watch for the trunk to be popped, to place the bag of guns in there, and then to go on her way. All of those little details that are evident in the record in this case demonstrate how much control he had over the firearms. What's really interesting about the precedent in this case, Cousins, for example, Shirley, for example, even Manzella, the case cited by Mr. Nongare, although it's not binding in this court, is that all of those cases dealt with convictions. The burden and the issue in that case was proof beyond a reasonable doubt. And in all those cases, that's what the standard was. So Manzella, where the result is that possession wasn't found or that there wasn't evidence to support a conviction based on possession, was applying that higher burden. Our burden in this case is preponderance of the evidence. And out of the three cases in this circuit that the government has cited and continues to talk about today, Cousins, Shirley, and Brothers, Shirley is probably the weakest case in terms of the amount of evidence showing possession over the firearms in that case. And even that case, where the evidence is relatively weak, survived a challenge on proof beyond a reasonable doubt. And with that comparison, it's significant here that the burden is preponderance of the evidence. And then beyond that, it's significant that the question is whether the district court clearly erred in finding by preponderance the evidence that possession was established. And why is it clear? Pardon? Why is the standard clear error here? Because it's a finding of fact that the district court made. The finding of possession of the firearms is a finding of fact. So unless the court has any questions of me, I simply can sum up and submit and request this court affirm the district court. We are definitely a hot bench, not a cold bench. So we've all read the briefs of both parties and are familiar with. Are there other questions? Hearing none, I think that's fine. Thank you, Your Honor. OK, Mr. Charney, give a chance on your rebuttal again. Just briefly, in that even applying the standards as set forth by both sides in the briefing, the position that we take is that the facts in this case simply don't establish the possession, whether it be actual or constructive. When we look briefly at this Cousins case, for example, we see it is easily distinguishable because Mr. Cousins actually provided samples in advance. He kept a tally and watched as things were being unloaded, and he participated in the unloading process of the prohibited substance. I think it was whiskey in that particular case. And Mr. Nungari, in this particular instance, didn't do anything even remotely similar. The most similar case is the one outside the circuit, which is Manzella, which really does make Mr. Nungari look far more like a broker who is an or a loan officer or something along those lines, as opposed to an individual who was in either actual or constructive possession. And therefore, I would ask that you take a careful look at the facts of this case. Look at it fact-specific, as all the precedent seems to indicate that you should, and conclude that in this particular instance, the facts do not, as a matter of law, amount to constructive possession and reverse the district court for giving Mr. Nungari the two-point enhancement. Thank you, sir. Thank you. Okay. Well, we thank Mr. Charney and Ms. Wick for your fine arguments, and we'll wish you well on your travels home, unless you're arguing again later today. Then we'll wish you well again there today.
judges: Friedman, Schroeder, Gould